UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN ROSCISZEWSKI,

        Petitioner,                            Case No. 13-14394
                                                   HON. GERSHWIN A. DRAIN

vs.


REBECCA ADDUCCI, Detroit Field Office
Director, Immigration and Customs Enforcement;
ERIC H. HOLDER, JR., United States Attorney
General,

        Respondent.

_____/

## **OPINION AND ORDER GRANTING PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS**

**I.    INTRODUCTION**

On October 8, 2013, Petitioner Steven Rosciszewski filed the instant action seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Petitioner, a citizen of Canada and lawful permanent resident ("LPR") of the United States, has been detained in the Calhoun County Jail since September 4, 2013, based upon the recent reopening of his deportation case after it lay dormant for fifteen years. Petitioner challenges his continued detention without a bond hearing, arguing his mandatory detention is based on the Board of Immigration Appeals's ("BIA") erroneous interpretation of section 236(c) of the Immigration and Nationality Act, 8 U.S.C. §1226(c). Petitioner maintains §1226(c)'s language is unambiguous and inapplicable to him, therefore he is

being unlawfully detained without an individualized bond hearing.  Petitioner requests the Court grant his petition and order an individualized bond hearing before the Immigration Court in Detroit, Michigan.

Conversely, Respondents, the Immigration and Customs Enforcement Agency's ("ICE") District Director for the Detroit office, Rebecca Adducci, and the United States Attorney General, Eric H. Holder, Jr., argue that *Chevron* deference mandates that this Court defer to the BIA's interpretation and decision in *In re Rojas*, 23 I. & N. Dec. 117 (B.I.A. 2001). *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  Respondents urge this Court to conclude that §1226(c)'s structural and linguistic ambiguities require that ICE detain Petitioner without bond pending the resolution of his deportation case.

In addition to Petitioner's petition, the Court has reviewed his Supplemental Brief [Dkt. No. 8] and the Respondent's Brief in Opposition to his petition [Dkt. No. 10].  Upon review of the parties' filings, the Court finds that oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve Petitioner's petition on the briefs submitted.  *See* E.D. Mich. L.R. 7.1(f)(2).

After careful consideration of the parties' submissions, the Court will reject the Third and Fourth Circuit Courts of Appeals's interpretation of §1226(c) and follow the majority of district courts in concluding that §1226(c) is inapplicable to Petitioner, who is entitled to an individualized bond hearing under §1226(a).  *See Khodr v. Adduci*, 697 F. Supp.2d 774 (E.D. Mich. 2010); *Louisaire v. Muller*, 758 F. Supp. 2d 229 (S.D.N.Y. 2010); *Quezada-Bucio v. Ridge*, 317 F.Supp. 2d 1221 (W.D. Wash. 2004); *Valdez v. Terry,* 874 F.Supp. 2d 1262 (D.N.M. 2011); *Zabadi v. Cherthoff*, No. 05-03335, 2005 U.S. Dist. LEXIS 31914, at *5 (N.D. Cal. Nov. 22, 2005).

Therefore, Petitioner's Petition for a Writ of Habeas Corpus is GRANTED.

## II. FACTUAL BACKGROUND

In 1959, Petitioner was accorded LPR status in the United States and has lived here ever since, along with all of his immediate family members who are citizens of the United States. Petitioner is the father of an eight year old son and he has strong ties to the community.

In 1994, as a result of an August 1982 conviction for possession of cocaine; less than twenty-five grams, and sentence of four months in jail, Petitioner was placed in deportation proceedings. Petitioner's original application for relief was denied, however in 1998 while on appeal, the BIA administratively closed Petitioner's case pursuant to the publication of an anticipated regulation implementing procedures for the termination of deportation proceedings for certain LPRs who would be impacted by the "Antiterrorism and Effective Death Penalty Act of 1996 . . . ." *See* Resp. in Opp., Ex. B.

On July 17, 2013, Petitioner applied for naturalization. During ICE's background check, it was discovered that in addition to the 1982 cocaine conviction, Petitioner was also convicted of marijuana possession in 2002, while using the alias Steven Rossi. On September 10, 2002, Petitioner was sentenced to thirty days in jail, however his sentence was suspended and he only served four hours.

In light of this information, a warrant was issued for Petitioner's arrest and he was taken into custody on September 4, 2013. Petitioner's deportation case was reopened shortly thereafter and remanded to the Immigration Court in Detroit, Michigan on October 18, 2013. Petitioner filed a Motion for Bond, however the Immigration Judge denied his request for a change in custody or a bond hearing based on the BIA's decision in *In re Rojas, supra*. Petitioner's Application for Naturalization apparently remains pending, presumably it will be stayed pending resolution of his

deportation case.

### III.   LAW & ANALYSIS

As an initial matter, it is clearly established that the District Director of ICE's Detroit Field Office is the appropriate Respondent in this matter, therefore venue is appropriate and Respondent's suggestion to the contrary is rejected. *See Khodr*, 697 F.Supp. 2d at 776-77 (rejecting the respondent's argument that it was not properly named because it was not the warden of the facility where the petitioner was located since the law of this circuit is "that the ICE District Director is the proper respondent in a habeas petition brought by an alien, since the District Director has power over such aliens.") (citing *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003)); *see also Parlak v. Baker*, 374 F.Supp. 2d 551 (E.D. Mich. 2005).

In *Parlak,* the petitioner was similarly detained in the Calhoun County Jail pursuant to § 1226(c) pending completion of removal proceedings, and the district court rejected the same argument raised by the Government herein, specifically, that the proper respondent was the warden of the Calhoun County Jail. *Parlak,* 374 F.Supp. 2d at 558 ("A careful review of the relevant documents evidencing the relationship between the Calhoun County Sheriff, the Calhoun County Jail, and the government relative to Petitioner's confinement clearly shows that Petitioner is not properly considered to be in the custody of the sheriff who operates the jail[,]" rather "the District Director has custodial control over Petitioner."). Therefore, Adducci is properly named as the Respondent herein.

Turning to the merits of the petition, there are several provisions in the Immigration and Nationality Act that pertain to the United States authority to detain individuals who are currently in removal proceedings. Relevant to this proceeding are §1226(a), concerning nonmandatory detention and §1226(c), which requires mandatory detention. Specifically, the relevant statutory provisions

state:

>  (a) Arrest, detention, and release.  On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General –
>
>  > (1) may continue to detain the arrested alien; and
>  > (2) may release the alien on–
>  > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>  > > (B) conditional parole; ..
>
>  \*                              \*                              \*
>
>  (c) Detention of criminal aliens.
>  > (1) Custody.  The Attorney General shall take into custody any alien who–
>  >
>  > \*                              \*                              \*
>  > > (B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)
>  >
>  > \*                              \*                              \*
>
>  when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(a) & (c).  It is the "when the alien is released" language that is at the center of the instant dispute.

In *Rojas*, an LPR from the Dominican Republic appealed his mandatory detention under §1226(c).  *Rojas*, 23 I. & N. Dec. at 117.  There was a two day gap between his release from criminal custody and his arrest by ICE agents.  *Id*.  The *Rojas* panel determined that a criminal alien is subject to mandatory custody pursuant to §1226(c) even if the alien is not immediately taken into custody when he is released from criminal confinement.  *Id.* at 122. The *Rojas* panel opined that the timing of detention was irrelevant to the Attorney General's and ICE's authority to detain aliens under §1226(c).  *Id.*

Petitioner argues the plain text, context, and structure of the statute make clear that the "when . . . released" provision authorizes the Attorney General to detain aliens when they are released from incarceration or within a reasonable time thereafter. Therefore, Petitioner argues the BIA's decision in *Rojas* is not entitled to deference under *Chevron*, and the Court must enforce the statute in accordance with Congressional intent. As such, Petitioner's mandatory detention under § 1226(c) is impermissible, rather the Attorney General's detention of Petitioner is controlled by §1226(a), which permits the Attorney General to release aliens on bond during removal proceedings.

Respondents maintain that the BIA's interpretation of §1226(c) in *Rojas* is reasonable because the "when . . . released" clause of §1226(c) simply indicates the point in time when ICE's duty to take the alien into custody arises. Moreover, the clause does not require ICE to detain an alien immediately upon release from incarceration because the meaning of "when" as "any time after" is consistent within the context of §1226(c). Lastly, even if this Court were to conclude that the statutory language is unambiguous, the Government's failure to abide by the statutory language should not be a windfall to the alien.

The *Chevron* inquiry is a two-step process: courts must inquire (1) whether "the statute is silent or ambiguous with respect to the specific issue," and if so (2) whether the agency's interpretation is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 843. The Court is required "to assume that the legislative intent is expressed by the ordinary meaning of the words used." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987). Additionally, the Court may not construe the language in a manner that renders a term surplusage. *See United States v. Menasche*, 348 U.S. 528, 538-39 (1955). If the language is ambiguous, then the Court must defer to the agency's reasonable interpretation of the statute. *Chevron*, 467 U.S. at 843. If the language is unambiguous, the Court must give effect to Congress's intent. *Id.* at 842-43. An agency's

interpretation may be rejected if it is arbitrary, capricious, or manifestly contrary to law. *Id.*

Here, the plain meaning of the word "when" contains a temporal element. According to the Oxford Dictionary of Current English, the primary definition of "when" is "as soon as" or "at the time that." The Oxford Dictionary of Current English 1046 (Della Thompson ed., 2d ed. 1993); *see also Alikhani v. Fasano*, 70 F.Supp. 2d 1124, 1130 (S.D. Cal. 1999) (explaining that "Webster's Third New International Dictionary defines 'when' as 'just after the moment that.'") Therefore "the clear language of the statute indicates that the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release."); *Pastor-Camarena v. Smith*, 977 F.Supp. 1415, 1417 (W.D. Wash. 1997) ("The plain meaning of this language is that it applies immediately after release from incarceration, not to aliens released many years earlier."); *Louisaire*, 758 F.Supp. 2d at 236 ("*Matter of Rojas* [is] contrary to the plain language of the statute. The clear purpose of §1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within §1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses*," even if they are still serving those sentences "under parole, supervised release, or probation.") (emphasis in original).

While other courts have concluded that "when" can also mean "at any time after," the Court declines to follow this non-binding authority. *See Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012); *Sylvain v. Attorney General of the United States*, 714 F.3d 150 (3d Cir. 2013). The broad interpretation of "when . . . released" advocated by the Government and adopted by the Third and Fourth Circuit Courts of Appeals finds no support from the statutory text nor from the Congressional intent, contrary to the Government's assertions. If Congress intended that mandatory detention be applied at any time after an individual was released, it could have used language consistent with this intent, such as "after the alien is released" or "regardless of when the alien is released." *See*

*Quezada-Bucio*, 317 F.Supp. 2d at 1230. Furthermore, if this Court were to adopt the Government's proposed interpretation of "when" as having no immediate temporal limit, the "when the alien is released language" becomes unnecessary surplusage. *See Valdez*, 874 F.Supp. 2d at 1265. Lastly, the Court's interpretation comports with Congress's intent in passing §1226(c) to "detain the most dangerous criminals because their immediate detention provides more protection to the community." *Id.* (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

Therefore, consistent with *Khodr* and the majority of courts that have reviewed this issue, the "when the alien is released" language is unambiguous and confines §1226(c)'s application to aliens taken into ICE custody immediately upon, or within a reasonable period of time thereafter, the alien's release from criminal incarceration. *Khodr*, 697 F.Supp. 2d at 779-80; *Valdez*, 874 F.Supp. 2d at 1265; *Quezada-Bucio*, 317 F.Supp. 2d at 1230; *Louisaire*, 758 F.Supp.2d at 236; *Pastor-Camarena*, 977 F.Supp. at 1417. Further, while the Court recognizes the difficulty with respect to determining a reasonable time period, there can be no serious question that eleven years is unreasonable. *Zabadi*, 2005 U.S. Dist. LEXIS 31914, at *5 (concluding that a two year gap between release from criminal custody and ICE detention was unreasonable for §1226(c) purposes); *Quezada-Bucio*, 317 F.Supp. 2d at 1225 (mandatory detention of §1226(c) inapplicable after three years from release from custody); *Khodr*, 697 F.Supp. 2d at 780 (finding "clearly unreasonable delay" in taking the petitioner into custody four years after his release from incarceration.)

Petitioner requests attorney fees in his prayer for relief. The Equal Access to Justice Act, 28 U.S.C. § 2412, requires a district court to award "a prevailing party other than the United States fees and other expenses in a civil action brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Dvorkin v. Gonzales*, Nos., 02-3851, 03-3245, 173 F. App'x 420, 423 (6th

Cir. Mar. 23, 2006) (citing 28 U.S.C. § 2412(d)(1)(A)). The Government's position is substantially justified if it is "justified in substance or in the main–that is, justified to a degree that could satisfy a reasonable person." *Id.* (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1998)(internal quotations omitted)). Even if the Government's position is ultimately rejected by the district court, it is still substantially justified if "a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact . . . ." *Id.* at 424.

Here, the Court concludes that the Government's position, while incorrect, was not substantially unjustified. The absence of a definitive decision from the Sixth Circuit Court of Appeals on the application of §1226(c) to individuals who have not been arrested immediately or within a reasonable time after release from criminal custody, as well as the fact that courts across the country cannot agree on this issue compel the conclusion that the Government's position was not substantially unjustified. *See Rosario v. Prindle*, No. 11-217, 2011 U.S. Dist. LEXIS 150602, *12 (E.D. K.Y. Nov. 28, 2011) (finding the Government's position was not substantially unjustified based on "[t]he lack of Sixth Circuit law on this critical issue, as well as the BIA's decision in *Matter of Rojas* . . . ."); *see also Dvorkin v. Gonzales*, 173 F. App'x at 424 (reversing the district court's award of attorney fees because "the issue is far from settled law . . . ."). Accordingly, the Court concludes that Petitioner is not entitled to an award of attorney fees and costs under the circumstances.

**IV.    CONCLUSION**

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus is GRANTED. This matter is REMANDED to the Detroit Immigration Court for the purpose of providing Petitioner with an individualized bond hearing pursuant to 8 U.S.C. in §1226(a). If the Immigration Court fails to provide Petitioner with a bond hearing within ten (10) days from the date of this Order,

Respondents SHALL IMMEDIATELY RELEASE Petitioner from custody.

SO ORDERED.


Dated: November 14, 2013              /s/Gershwin A Drain
                                      GERSHWIN A.  DRAIN
                                      UNITED STATES DISTRICT JUDGE